IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PHILIP A. CAMPOLO, JR.,

                          Plaintiff,

        vs.                                    Civil Action No.
                                               5:05-CV-1610(DEP)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

<u>APPEARANCES</u>:                        <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

SCOFIELD LAW OFFICE             CHRISTINE A. SCOFIELD, ESQ.
506 East Washington St.
Suite D
Syracuse, NY 13202


<u>FOR DEFENDANT</u>:

HON. GLENN T. SUDDABY          KRISTINA D. COHN, ESQ.
U.S. Attorney's Office         Special Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL      BARBARA L. SPIVAK, ESQ.
Social Security Administration Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

Plaintiff Philip A. Campolo, Jr., who suffers from various medical conditions including, principally, the residual effects of a severe broken left arm requiring surgical reconstruction, osteoarthritis of the right knee, and bilateral ulnar nerve neuropathy and cubital tunnel syndrome, has commenced this action to challenge the denial of his application for disability insurance benefits under the Social Security Act.  In support of his challenge plaintiff maintains that the finding of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the effect that he was not disabled at the relevant times, is not supported by substantial evidence.  Plaintiff asserts that his medical conditions meet or equal the criteria set forth for two of the presumptively disabling conditions listed in the governing regulations, and further challenges the ALJ's decision, based upon his findings regarding plaintiff's residual functional capacity ("RFC") and testimony elicited from a vocational expert, that he is capable of performing work in at least some of his prior positions.

Based upon careful consideration of the record which was before the agency at the time of the ALJ's determination, I conclude that his finding resulted from the application of proper legal principles and is supported by

2

substantial evidence in the record.  Accordingly, the agency's determination of no disability will be upheld, and plaintiff's complaint in this action dismissed.

I.    BACKGROUND

The plaintiff was born on September 16, 1943; at the time of the administrative hearing in this matter, he was sixty years old. Administrative Transcript at pp. 45, 210.[1]  Plaintiff is five foot ten inches tall and weighs two hundred fourteen pounds.  AT 80.  Plaintiff is married, and lives in East Syracuse.  AT 45, 80, 210.  Plaintiff has a twenty-seven year old daughter who, as a result of a medical condition, sometimes lives at home with the plaintiff and his wife.  AT 210.

Plaintiff has a high school degree, but does not have any further formal educational experience.  AT 211.  Campolo is a licensed real estate broker, AT 211, and in the past has worked in various settings.  Over the years, beginning in 1977, plaintiff was self-employed as a real estate broker and a general contractor.  AT 82, 212, 222.  As a contractor he was primarily engaged in renovation in the carpentry, masonry, and tiling areas.  AT 82, 223.  For a period during 1995 and 1996, plaintiff also

---

[1]    Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 6, filed by the Commissioner together with his answer, will be cited hereinafter as "AT ___."

worked as the manager of a pizza restaurant.   AT 224, 82.

On October 28, 2002, Campolo fell off of a ladder while working on the roof of a house, sustaining multiple injuries to his left side including, principally, a displaced, comminuted left distal humerus fracture.  AT 81, 132, 212.  Plaintiff was hospitalized as a result of his injuries, ultimately undergoing surgery on November 12, 2002 to repair the damage to his left arm and elbow.  AT 140-41, 213.  Following the surgery plaintiff remained in the hospital for an additional period due to continued pain, but ultimately was discharged with a sling support for immobilization and provided with pain medications.  AT 133.  Reports of Dr. Daniel J. Murphy, Jr., the orthopedic surgeon who performed the surgery, of visits following the operation reflect that with the exception of numbness in the fourth and fifth fingers and some clawing, plaintiff's recovery from the surgery met expectations.  AT 146-49.

While recovering from his left arm and elbow surgery plaintiff developed difficulties with his left shoulder, resulting in pain and the inability to lift.  AT 146.  The results of magnetic resonance imaging ("MRI") testing revealed a large rotator cuff tear.  AT 145.  While surgery was recommended by Dr. Murphy, plaintiff advised that the scheduling of an operation would have to await some business to which he was required

4

to attend and that he would advise Dr. Murphy's office of when he would like the operation scheduled.  AT 145.  Plaintiff's agreement to undergo the rotator cuff surgery was given despite Dr. Murphy's expression of reservation as to whether or not the tear was reparable.  *See* AT 164.  As of the date of the hearing, however, the record now before the court does not disclose whether that surgery has been performed.  *See id.*

In August of 2003 plaintiff was seen by Dr. Mahender Goriganti, upon a referral from his orthopedic surgeon, Dr. Murphy.  AT 153-54, repeated at 161-62.  During that examination plaintiff complained to Dr. Goriganti of loss of strength and numbness in his right hand, as well as neurological deficits in his left upper extremity.  The results of Dr. Goriganti's examination, however, are largely unremarkable, and plaintiff was found to be neurologically intact.  *Id.*  Based upon his examination Dr. Goriganti diagnosed plaintiff as suffering from left rotator cuff syndrome versus traumatic cuff tear, adhesive capsulitis, ulnar nerve neuropathy, and bilateral carpal tunnel syndrome.  *Id.*  The results of electrodiagnostic studies revealed bilateral severe carpal tunnel syndrome, more significant bilateral severe ulnar nerve neuropathy on the left side than the right side, but no evidence of cervical radiculopathy.  AT 154, 162-63.  Based upon his findings Dr. Goriganti recommended surgery for transposition of

plaintiff's bilateral ulnar nerves, particularly on the left side, and indicated that plaintiff would probably need bilateral carpal tunnel release as well. AT 154.  Once again, there is no indication in the record that plaintiff underwent the recommended surgery prior to the hearing in this matter.

In March of 2004 plaintiff was seen by Dr. Brett Greenky, complaining of right knee pain and dysfunction, attributing his circumstances to "an old football injury."  AT 155-57.  Plaintiff reported to Dr. Greenky that he had experienced progressive arthritis in the right side of his knee over the past fifteen or twenty years, and advised that more than forty years prior he had undergone an open medial meniscectomy, which is an incision of the intra-articular meniscus, or the knee joint.[2]  *Id.*; *see also* Dorland's Illustrated Medical Dictionary at p. 1085 (29th ed. 2003).   Based upon his examination Dr. Greenky reported that plaintiff had a hesitant antalgic gait, but that his knee stability was normal, and his right knee joint had moderate fusion.  AT 155-57.  Dr. Greenky concluded that plaintiff was in need of a knee replacement, and plaintiff advised that

---

[2]      In her letter brief, plaintiff's counsel suggests that the hearing transcript is incorrect when attributing that surgery to the year 1966, contending that the surgery was actually performed in 1996.  *See* Letter Brief (Dkt. No. 14) Exh. A ¶ 4.  This assertion is inconsistent with both plaintiff's statements to Dr. Greenky and his hearing testimony, and there are no records to support the assertion that plaintiff underwent knee surgery in 1996.  *See* AT 156, 215-16.

he wished to proceed with the surgery.  *Id.*  Once again, there is no indication that plaintiff underwent the recommended surgery prior to the hearing in this matter.

In addition to his extensive work activities, the record reveals that plaintiff is fairly active notwithstanding his medical conditions.  Plaintiff reports that in a typical day, he takes care of his dog, watches television, and takes care of his personal needs – although he requires someone to help put on his socks.  AT 108-10.  Additionally, plaintiff vacuums, dusts, washes dishes, and rides in the car.  *Id.*  Plaintiff also notes that he is able to go grocery shopping with his wife, to read, and to do crossword puzzles, and until his injury in October of 2002 played basketball.  AT 108, 111.  Plaintiff also notes that he is able to visit with friends and family and attends church weekly.  AT 111-13.  During the hearing plaintiff also testified that he is able to use a knife and fork, to take care of his grandchildren, to drive, to attend movies, and to go out to restaurants, and that his favorite hobby was cooking.  AT 223-28.

II.   <u>PROCEDURAL HISTORY</u>

A.   <u>Proceedings Before The Agency</u>

Plaintiff filed an application for disability insurance benefits with the agency on January 3, 2003.  AT 45-47.  That application was denied on or

about March 18, 2003.  AT 35-38.

At plaintiff's request, a hearing was conducted by ALJ Donald T. McDougall on March 16, 2004 to address plaintiff's claim for benefits.  AT 205-41.  At that hearing, during which plaintiff was represented by counsel, testimony was elicited from the plaintiff as well as Julie Andrews, a vocational expert.[3]

Following the hearing, ALJ McDougall issued a decision on May 7, 2004, setting forth his findings, based upon a *de novo* review of the evidence adduced.  AT 16-25.  Applying the now-familiar governing five step analysis for determining disability, ALJ McDougall first concluded that plaintiff had not engaged in substantial activity during the relevant times. Proceeding to step two of the disability algorithm, the ALJ next determined that plaintiff suffers from several medically determinable impairments that, "at least in combination" are sufficiently severe as to significantly limit his ability to perform basic work activities for at least twelve consecutive months, including, *inter alia,* the residual effects of his left arm and elbow injury and surgery, osteoarthritis of the right knee, and bilateral ulnar nerve neuropathy, but concluded that none of those conditions, either

---

[3]     The qualifications of vocational expert Andrews are set forth in the record.  *See* AT 42-43.

8

individually or in combination, was sufficiently severe to meet or equal the criteria for any listed, presumptively disabling conditions set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 18.  When addressing the listings, ALJ McDougall specifically considered general listings pertaining to the musculoskeletal system, including Listing 1.07, as well as the neurological deficits contained in Listing 11.00.  *Id.*

The ALJ next proceeded to determine plaintiff's RFC, given the limitations associated with his medical conditions.  AT 18-19.  After considering the medical evidence in the record and setting forth a detailed description concerning these findings, the ALJ rejected plaintiff's subjective testimony concerning his limitations as inconsistent with other evidence in the record, particularly in view of his decision to put off the recommended surgery.  AT 22-23.  The ALJ then concluded that plaintiff retains the RFC to perform work presenting only modest exertional demands and additionally requiring no overhead work involving the non-dominant (left) upper extremity, with no lifting of more than five pounds occasionally with the left hand or arm, and frequent lifting of no more than two pounds, and additionally requiring no more than occasional fine fingering with the non-dominant (left) hand, and no more than occasional work on ramps or stairs or any climbing of ladders, ropes or scaffolds, and

9

with no more than occasional balancing, stooping or crouching, with no crawling or kneeling.  AT 23.  The ALJ further concluded that the plaintiff should be expected to be absent up to one work day per month.  *Id.* Applying this RFC finding to plaintiff's past relevant work, with the assistance of responses to hypothetical questions closely approximating plaintiff's condition posed to vocational expert Julie Andrews, the ALJ concluded that plaintiff retains the RFC to perform his past relevant work as a real estate agent as well as his prior position doing route sales work involving food machines.  AT 23-24.  Based upon these findings, the ALJ concluded that the plaintiff had not sustained his burden of demonstrating disability and found it unnecessary to proceed to step five of the governing test.  *Id.*

The ALJ's opinion became a final determination of the agency when, on October 24, 2005, the Social Security Administration Appeals Council denied plaintiff's request for review of the ALJ's decision.  AT 4-6.

B.    This Action

Plaintiff commenced this action on December 28, 2005.  Dkt. No. 1. Issue was thereafter joined on June 7, 2006 by the filing of an answer on behalf of the Commissioner, accompanied by an administrative transcript of the evidence and proceedings presented to the agency.  Dkt. Nos. 5, 6.

With the filing of a letter brief from the plaintiff's counsel on October 5,

2006, Dkt. No. 8, and a brief on behalf of the Commissioner on November

2, 2006, Dkt. No. 9, this matter is ripe for determination and has been

referred to me, on consent of the parties, for disposition, pursuant to 28

U.S.C. § 636(c).[4, 5]  *See* Dkt. No. 13.

III.    DISCUSSION

    A.    Scope of Review

      A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

---

[4]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[5]    On September 12, 2007 plaintiff submitted a corrected version of his original brief filed in October of 2006, in light of the fact that through inadvertence his initial submission to the court was incomplete.  *See* Dkt. No. 14.  I therefore have considered only this more recent submission in evaluating plaintiff's claims.  In that regard, however, I have not entertained the arguments raised by plaintiff in Exhibit A to his brief, consisting of a letter to the Social Security Appeals Council addressing additional points not included in his brief to this court.

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether

the Commissioner applied the proper legal standards, his decision should

not be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If,

however, the correct legal standards have been applied and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision should withstand judicial scrutiny regardless

of whether the reviewing court might have reached a contrary result if

acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314

(N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand,

13

while unusual, is appropriate when there is "persuasive proof of disability"

in the record and it would serve no useful purpose to remand the matter

for further proceedings before the agency.  *See Parker*, 626 F.2d at 235;

*see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644

(2d Cir. 1983).

B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final

matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   The Evidence In This Case

In support of his challenge plaintiff argues, first, that collectively his impairments meet or equal Listing 1.07, thus ending the inquiry at step three and dictating a finding of disability.  Alternatively, plaintiff asserts that the ALJ's RFC finding, which serves as a lynchpin for his finding of no disability, is not supported by substantial evidence and additionally that the hypothetical questions posed to the vocational expert, leading to her testimony that plaintiff is capable of performing his past relevant work, did not include all of the limitations noted in the record, and thus did not closely approximate his condition.

16

1.   Listing 1.07

In his decision, ALJ McDougall specifically considered whether plaintiff's condition met or equaled Listing 1.07, ultimately concluding that it did not.  Plaintiff assigns error to this finding.

By regulation, the Commissioner has set forth a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 1; *see Sullivan v. Zebley*, 493 U.S. 521, 529-30, 110 S. Ct. 885, 891 (1990).  The listed impairments are presumptively disabling – "[t]hat is, if an adult is not actually working and his [or her] impairment matches or is equivalent to a listed impairment, he [or she] is presumed unable to work and is awarded benefits without a determination whether he [or she] actually can perform his [or her] own prior work or other work."  *Zebley*, 493 U.S. at 532, 110 S. Ct. at 892 (citing *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987)).

At step three of the now familiar, five part analysis, an ALJ must

---

[6]      The listings are broken down into fifteen categories, including growth impairment, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary impairments, hematological disorders, skin disorders, endocrine system, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, and immune system.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

determine whether the condition from which a claimant suffers meets or equals a listed impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris*, 728 F.2d at 584).  The burden of establishing that a condition meets or equals one of the listed impairments rest with the claimant.  *Shaw*, 221 F.3d at 132; *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000).

As can be seen, a claimant may establish disability at step three by proving that his or her impairment meets all of the literal requirements of a particular listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Alternatively, disability may be shown when, while not meeting the specific criteria of a listing, a claimant's condition is equivalent to the listed condition.  *Id.*  "For a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Zebley*, 493 U.S. at 531, 110 S. Ct. at 891 (citing 20 C.F.R. § 416.926(a)) (emphasis in original).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment."  *Zebley*, 493 U.S. at 531, 110 S. Ct. at 892 (citation omitted).

Plaintiff maintains that at step three of the governing, sequential analysis the ALJ erred in failing to conclude, based upon the applicable medical evidence, that his condition meets or equals a listed, presumptively disabling disorder.  In making that argument, plaintiff cites Listing 1.07.

Listing 1.07 specifies, as a criteria for a presumptively disabling condition, the following:

> Fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P., App. 1 § 1.07.  As can be seen, two critical elements of Listing 1.07 are the requirements of continuing surgical management and the expectation that function not be restored within twelve months of onset.  *Id.*; *see Pruitt v. Barnhart*, No. 06-1034, 2007 WL 461020, at *7 (D. Kan. Jan. 2, 2007).  The regulations specifically define "continuing surgical management," as used in Listing 1.07, as referring

> to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part.  It may include such factors as post-surgical procedures, surgical complications,

19

> infections, or other medical complications, related
> illnesses, or related treatments that delay the
> individual's attainment of maximum benefit from
> therapy. . . .

20 C.F.R. Pt. 404, Subpt. P., App. 1 § 1.00M.

In his decision ALJ McDougall found that plaintiff's impairments were not sufficiently severe, either singly or in combination, to meet or equal the criteria associated with Listing 1.07.  AT 18.  I find, based upon my review of the record, that the ALJ's rejection of that listed disorder as inapplicable to plaintiff's circumstances is supported by substantial evidence.  Plaintiff did not undergo continuing surgical management of his arm fracture, with the option of surgery repeatedly being left to his discretion rather than mandated by a specific staged surgical protocol.  In fact, following his November 2002 elbow surgery, Dr. Murphy reported that plaintiff was doing well and his left hand was "reasonably functional", noting that plaintiff could make a full fist with his left hand.  AT 147, 149.  By February of 2003, Dr. Murphy noted that an x-ray of plaintiff's left humeral fracture and shoulder were healing and acknowledged that plaintiff was "doing pretty well."  AT 146.  By these accounts, function of plaintiff's elbow was in the process of being restored well within the twelve month period following his surgery, and plaintiff has not set forth any evidence

establishing otherwise.

While it is true that Dr. Murphy recommended that plaintiff undergo left rotator cuff surgery in February of 2003, and Campolo apparently agreed to do so, there is no definitive evidence in the record that plaintiff had the suggested surgery.  *See* AT 146, 164.  Additionally, in or about September of 2003, Dr. Gorgiganti and Dr. Murphy recommended that plaintiff undergo surgery for his bilateral carpal tunnel syndrome; as of March 2004, however, there is no indication in the record that plaintiff received the surgery.  AT 144, repeated at 152, 154.  Plaintiff's declining to exercise his discretion to have the carpal tunnel surgery, based upon having to take care of personal "business" prior to incurring the expense, does not support a finding that his care was being managed with sequential surgeries as required under Listing 1.07.[7]

Given the absence of evidence to the contrary – and plaintiff has not pointed to any currently contained within the record – the reports revealing plaintiff's improvement in function of his left upper extremity within twelve months of onset and the lack of continuing surgical management supports the ALJ's finding that plaintiff's condition does not meet or equal in

---

[7]       One could argue that in any event the conditions leading plaintiff's physicians to recommend those surgeries were not sufficiently connected to the elbow condition as to qualify as continuing surgical management.

severity the conditions referenced in Listing 1.07.[8]

## 2.   RFC Finding

The lynchpin of the ALJ's decision is his determination that notwithstanding the residual effects of a severe broken left arm requiring surgical reconstruction, osteoarthritis of the right knee, and bilateral ulnar nerve neuropathy and cubital tunnel syndrome, Campolo is capable of performing his past relevant work, and meeting the exertional requirements of those positions.  A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a.  Nonexertional limitations or impairments, including

---

[8]    Although plaintiff claims in his submission to the court that he underwent four surgeries between October 28, 2002 and March 16, 2004, *see* Dkt. No. 14, the record fails to substantiate this representation.

impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

The record provides ample evidence to buttress the ALJ's RFC finding, as exemplified by the records of Dr. Murphy, who concluded that plaintiff was doing well following his left elbow surgery and noted that his left hand was "reasonably functional."  AT 149.  Dr. Murphy further opined that plaintiff's gait was normal, his reflexes were intact, his left wrist and hand had normal range of motion, and he sustained only mild atrophy and

strength deficiency in his upper left extremity.  AT 143-149.[9]

The ALJ's RFC determination is also supported by the findings of Dr. Goriganti, who reported that plaintiff was neurologically intact, his gait was normal, and his upper and lower extremities showed normal strength, coordination and reflexes.  AT 153, repeated at 161.  While Dr. Goriganti did recommend surgery for transposition of plaintiff's bilateral ulnar nerves, especially on the left side, as well as bilateral carpal tunnel release, *see* AT 154, there is no indication that plaintiff underwent the recommended surgery prior to the hearing in this matter.

The opinions of Dr. Greenky, who relatively recently began seeing the plaintiff for knee pain and dysfunction, do not undermine the ALJ's determination.  While Dr. Greenky reported that plaintiff had a hesitant, antalgic gait, he also noted that plaintiff's right knee reflected normal strength, and that he possessed good reflexes, with no atrophy and normal stability.[10]  AT 156-57.

The ALJ's RFC finding also draws support from plaintiff's testimony

---

[9]     While Dr. Murphy did opine the plaintiff was in need of carpel tunnel surgery, he noted that the condition would have resulted in only a temporary disability. AT 144, repeated at 152.

[10]     It should be noted in this regard that by plaintiff's own account he was able to play basketball weekly, notwithstanding his knee condition, until his fall in October of 2002, and he did not complain of knee pain immediately following that fall. AT 97, 111, 134.

regarding his daily activities.  Plaintiff testified that he is able to cook,

drive, attend movies, go to restaurants, care for his grandchildren, attend

church weekly, visit friends and family, read, watch television, perform

light chores, do crossroad puzzles, and care for his dog.  AT 108-13, 226,

228.  This testimony, in combination with the objective findings of plaintiff's

health care providers, provides sufficient support for the ALJ's RFC

determination.

###     3.    Plaintiff's Ability To Perform His Past Relevant Work

At step four of the sequential evaluation catechism, the ALJ

examined plaintiff's ability to perform his past relevant work.  That work

included acting as a real estate agent and sales representative as well as

a route salesman of food machines.  AT 23-24.  That analysis was made

with the assistance of the testimony elicited from Julie Andrews, a

vocational expert.

It is well-established that elicitation of testimony from a vocational

expert is a proper means of fulfilling the agency's burden at step five of the

disability test to establish the existence of jobs in sufficient numbers in the

national and regional economy that plaintiff is capable of performing.

*Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas v.*

*Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); *Dwyer v. Apfel*, 23 F.

Supp.2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability.  *Id.*

The record reflects that the ALJ posed to the vocational expert hypotheticals which contain facts congruent with plaintiff's limitations, which I have already found were supported by substantial evidence.  In response, the vocational expert opined that plaintiff would be able to perform his past relevant work.  There is nothing in the record, nor in plaintiff's brief, that undermines this conclusion and demonstrates that plaintiff sustained his burden at step four of the analysis to prove an inability to perform the functions of his past relevant work.

IV.    SUMMARY AND CONCLUSION

The record which was before the agency adequately demonstrates

that plaintiff's conditions, both individually and in combination, do not meet or equal any of the listed, presumptively disabling conditions set forth in the regulations, particularly in view of the fact that plaintiff was not under continuous post-operative surgical care over the requisite period for his elbow condition.  The record also contains adequate support for the ALJ's RFC finding, and the ultimate conclusion that plaintiff is able to perform his past relevant work notwithstanding his limitations is adequately supported by the record and testimony elicited from a vocational expert.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects; and it is further

ORDERED that the Clerk of the Court serve a copy of this decision and order upon the parties in accordance with this court's local rules.


Dated:      September 28, 2007
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge

27